UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                     :

JASPER LAKE VENTURES TWO LLC,          :

                                                       :

                Plaintiff,                :

                                                     :           24-cv-7386 (LJL)

        -v-                                :

                                                     :      OPINION AND ORDER

LOGAN A. BEITLER and LOGAN A. BEITLER, AS  :
TRUSTEE OF THE BEITLER FAMILY LIVING    :
TRUST DATED SEPTEMBER 19, 2008,        :

                                                     :

                Defendants.             :

                                                        :
------------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/16/2025

LEWIS J. LIMAN, United States District Judge:

Plaintiff Jasper Lake Ventures Two LLC ("Plaintiff") moves (1) for an order granting it summary judgment on its complaint against Defendants Logan A. Beitler and Logan A. Beitler as Trustee of the Beitler Family Living Trust Dated September 19, 2008 ("Defendants") pursuant to Federal Rule of Civil Procedure 56; and (2) for an order striking Defendants' affirmative defenses and dismissing Defendants' counterclaims and offsets pursuant to Federal Rules of Civil Procedure 12 and 41. Dkt. No. 31.

For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

The following facts are undisputed for purposes of this motion, except where otherwise indicated, and are construed in favor of the non-moving parties, Defendants.

## I.    The Loan Documents

Plaintiff is a Delaware limited liability company. Dkt. No. 1 ¶ 2. It is party to a Promissory Note (the "Note"), Loan Agreement (the "Loan Agreement"), and Guaranty (the "Guaranty," and with the Note and Loan Agreement, the "Loan Documents") all dated

September 15, 2023.  *See* Dkt. Nos. 32-2, 32-3, 32-4.  Non-parties Beitler Texas Enterprises LLC (the "Beitler Borrower") and Westcliff Investors, LLC (the "Westcliff Borrower" and, with the Beitler Borrower, the "Borrowers") are parties to the Loan Agreement and the Note.  *See* Dkt. Nos. 32-2, 33-3.  The Loan Agreement provides for the loan by Plaintiff to the Borrowers of $6,400,000 to be evidenced by the Note, which is in the same amount and is payable to Plaintiff by Borrowers.  Dkt. No. 32-3 at 2; Dkt. No. 32-3 § 2.1.3, at 4.[1]  Defendants are parties to the Guaranty.  *See* Dkt. No. 32-4.  Pursuant to the Guaranty, they agree to unconditionally guarantee payment and performance of the Note and of the Borrowers' obligations under the Loan Documents.  *See id.* at 2.  The loan was secured by two pieces of property (the "Properties") owned by Borrowers: a lot in College Station, Texas (the "College Station Property") and a lot in Dallas, Texas (the "Dallas Property").  Dkt. No. 32-3 at 68–69, 77; Dkt. No. 32-8.

The Loan Agreement establishes several possible "events of default," including, as relevant here, the following:

- If the Borrowers fail to make a "Mandatory Principal Prepayment" of $1,000,000 by March 15, 2024, in accordance with Section 2.4.2 of the Loan Agreement, *id.* § 10.1.1.30, at 49;

- If Borrowers are the subject of a Bankruptcy Action, *id.* § 10.1.1.8, at 48;

- If the Borrowers fail to list the Dallas Property for sale pursuant to the terms of Section 4.2.19 of the Loan Agreement, *id.* § 10.1.1.31, at 49; and

- If the Borrowers fail to pay the entirety of the indebtedness on or before the Maturity Date of September 15, 2024, pursuant to Section 2.3.2 of the Loan Agreement, *id.* § 10.1.1.1, at 46, 78.

Upon the occurrence of an event of default, the Loan Agreement entitles Plaintiff to "accelerate maturity of the Note and any other indebtedness of Borrower to Lender, and demand payment of the principal sum due thereunder, with interest, advances, costs and attorneys' fees

---

[1] Unless otherwise specified, citations to docket entries use ECF pagination.

and expenses (including those for appellate proceedings), and enforce collection of such payment *by foreclosure of the Security Instrument* or the enforcement of any other collateral, or other appropriate action." *Id.* § 10.2.4, at 51 (emphasis added); *see also id.* § 10.2.1, at 50 (stating that in the event of default, Plaintiff has the right to foreclose the Security Instrument); *id.* § 10.2.2, at 50 (same).

Furthermore, under the Note, Borrowers agree to pay the principal sum of the Note and interest on the unpaid principal and all other amounts due under the Loan Documents. Dkt. No. 32-2 at 2. As under the Loan Agreement, the Note explains that "[t]he Debt shall without notice become immediately due and payable at the option of Lender if any payment required in this Note is not paid on or prior to the date when due or if not paid on the Maturity Date or on the happening of any other Event of Default." *Id.*

Pursuant to the Guaranty, Defendants agree unconditionally to guaranty payment and performance to Plaintiff of the Borrowers' obligations under the Note and Loan Agreement. Section 1.1 of the Guaranty provides:

> Guarantor hereby *irrevocably and unconditionally* guarantees to Lender and its successors and assigns the payment and performance of the Guaranteed Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise. Guarantor hereby *irrevocably and unconditionally covenants and agrees* that it is jointly and severally liable for the Guaranteed Obligations as a primary obligor.

Dkt. No. 32-4 § 1.1, at 3 (emphasis added). Elsewhere, the Guaranty confirms that these obligations are unconditional, absolute, and irrevocable. *See id.* § 1.3(a), at 3; *see also* § 1.4, at 4 ("This Guaranty is an irrevocable, absolute, continuing guaranty of payment and performance and not a guaranty of collection."); *id.* at 2 ("WHEREAS, Lender is not willing to make the Loan, or otherwise extend credit, to Borrower unless Guarantor unconditionally guarantees payment and performance to Lender of the Guaranteed Obligations . . . .").

3

The Guaranty carefully circumscribes Defendants' ability to avoid or mitigate their obligations under the Note and Loan Agreement.  First, Section 1.5, entitled "Guaranteed Obligations Not Reduced by Offset," provides that Defendants' liabilities and obligations "shall not be reduced, discharged or released because or by reason of any existing or future offset, claim or defense of Borrower, or any other Person, against Lender or against payment of the Guaranteed Obligations, whether such offset, claim or defense arises in connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise." *Id.* § 1.5, at 4.  Section 1.7, entitled "No Duty to Pursue Others," likewise provides that Plaintiff "shall not be required to mitigate damages or take any other action to reduce, collect or enforce the Guaranteed Obligations."  *Id.* § 1.7, at 4.  And Section 1.8 states that Defendants waive, among other things: the right to assert against Plaintiff any counterclaim, other than a mandatory or compulsory counterclaim, *id.* § 1.8(l), at 5; any defense based upon an election of remedies by Plaintiff, *id.* § 1.8(n), at 5; and any lack of commercial reasonableness in dealing with the collateral for the loan, *id.* § 1.8(r), at 6.

Article II of the Guaranty further addresses "events and circumstances not reducing or discharging Guarantor's obligations."  *Id.* at 8–11.  It specifies that Defendants' obligations under the Guaranty "shall not be released, diminished, impaired, reduced or adversely affected" by certain circumstances, and that Defendants "waive[] any common law, equitable, statutory or other rights (including without limitation rights to notice) which [Defendants] might otherwise have as a result of or in connection with" those circumstances.  *Id.* at 8–9.  Accordingly, the following events in no way alter Defendants' obligations under the Guaranty:

- Section 2.7 Release of Collateral. Any . . . deterioration, waste, loss or *impairment (including without limitation negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security* at any time . . .

- Section 2.8. Care and Diligence. The failure of Lender or any other Person to exercise *diligence or reasonable care* in the preservation, protection, enforcement, *sale* or other handling or treatment of *all or any part of any collateral, property or security . . .*

- Section 2.9 Unenforceability. The fact that any collateral, security, security interest or lien contemplated or intended to be given, created or granted as security for the repayment of the Guaranteed Obligations, or any part thereof, shall not be properly perfected or created, or shall prove to be unenforceable or subordinate to any other security interest or lien, *it being recognized and agreed by Guarantor that Guarantor is not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectability or value of any of the collateral for the Guaranteed Obligations*.

- Section 2.10 Offset. The Note, the Guaranteed Obligations and the liabilities and obligations of Guarantor to Lender hereunder *shall not be reduced, discharged or released because of or by reason of any existing or future right of offset, claim or defense of Borrower against Lender . . .*

- Section 2.14 Other Actions Taken or Omitted. Any other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Obligations, or the security and collateral therefor, *whether or not such action or omission prejudices Guarantor or increases the likelihood that Guarantor will be required to perform and/or pay the Guaranteed Obligations pursuant to the terms hereof*, it being the unambiguous and unequivocal intention of Guarantor that Guarantor shall be obligated to perform and/or pay the Guaranteed Obligations when due, *notwithstanding any occurrence, circumstance, event, action, or omission whatsoever*, whether contemplated or uncontemplated, and whether or not otherwise or particularly described herein, which obligation shall be deemed satisfied only upon the full and final payment and satisfaction of the Guaranteed Obligations.

*Id.* at 8–10 (emphasis added).

## II.    The Defaults

Problems for the Borrowers began shortly after signing the Loan Documents.  Plaintiff alleges at least five different defaults.  Defendants do not dispute that these defaults occurred, although they do dispute their liability for them.  Dkt. No. 40 ¶ 5.  First, the Borrowers failed to pay the Mandatory Principal Prepayment of $1,000,000 on March 15, 2024.  Dkt. No. 32-3 § 2.4.2, at 7, 74.  Second and third, the Borrowers failed to list the Dallas Property for sale pursuant to the terms of Section 4.2.19 of the Loan Agreement and to furnish Plaintiff financial information pursuant to Section 4.1.7. of the Loan Agreement.  Dkt. No. 32 ¶ 25(c), (d).  Fourth,

the Borrowers filed for bankruptcy on July 1, 2024. *See id.* ¶ 25(a). And fifth, the Borrowers failed to pay the entirety of the indebtedness on or before the Maturity Date. *Id.* ¶ 25(e).

On March 19, 2024, Plaintiff sent a first notice to the Borrowers and Defendants advising them of their failure to make the Mandatory Principal Prepayment and asserting that should they fail to cure the default "within seven (7) days of the date of this letter, *time being of the essence with respect thereto*, then Lender may exercise any and all rights and remedies under the Loan Documents, applicable law and/or in equity against the Borrower, Guarantor or any other guarantor, endorser, surety or indemnitor under the Loan . . . and/or the Property in such manner and at such times as the Lender in its sole and absolute discretion deems appropriate." Dkt. No. 32-5 at 4.

On April 16, 2024, Plaintiff sent the Borrowers and Defendants another letter advising them of their failure to make timely payments under the Note, that this constituted an event of default, and that if the default was not cured within seven days, Plaintiff intended to accelerate the maturity of the Note and demand payment for the full, unpaid principal balance together with accrued but unpaid interest and all fees and expenses, and to foreclose the lien under the Loan Documents. Dkt. No. 32-6 at 4.

On May 14, 2024, Plaintiff served the Borrowers and Defendants with a Notice of Foreclosure. Dkt. No. 32-7. Plaintiff asserted that due to the Borrowers' failure to pay, the indebtedness evidenced by the Note was being accelerated and was due and payable in full, and Plaintiff would commence to enforce the power of sale created in the Deed of Trust by foreclosing on the Properties. *Id.* at 4.

On March 4, 2025, Plaintiff foreclosed on the Dallas Property. Dkt. No. 41 ¶ 14. On May 6, 2025, Plaintiff foreclosed on the College Station Property. *Id.* ¶ 26.

## PROCEDURAL HISTORY

This case was initiated by a complaint filed on September 30, 2024.  Dkt. No. 1.  On March 7, 2025, Defendants filed an answer and counterclaims against Plaintiff.  Dkt. No. 16.  Plaintiff replied to the counterclaims on March 27, 2025, Dkt. No. 21, and, on April 17, 2025, Defendants filed an amended answer and counterclaims, Dkt. No. 22.  Plaintiff replied to the amended answer and counterclaims on May 8, 2025.  Dkt. No. 24.

Plaintiff filed this motion for summary judgment on September 12, 2025.  Dkt. No. 31.  Plaintiff also filed the affidavit of Joseph Kolatch, the declaration of Michael J. Bonneville, a Rule 56.1 statement, and a memorandum of law in support of its motion.  Dkt. Nos. 32–35.  On October 24, 2025, Defendants filed a memorandum of law in opposition to the motion for summary judgment, along with a Rule 56.1 statement and the declarations of Donald Rezak and George P. Alchas.  Dkt. Nos. 39–42.  On November 13, 2025, Plaintiff filed a reply brief and reply declaration in further support of its motion.  Dkt. Nos. 43–44.

## LEGAL STANDARD

Under Federal Rules of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (citation omitted).  The party seeking summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).

"Because of the simplicity of issues in dispute," courts often observe that "suits to enforce promissory notes and guaranties are particularly appropriate for disposition by summary

7

judgment." *Long Side Ventures, LLC v. Adarna Energy Corp.*, 2014 WL 4746026, at *3

(S.D.N.Y. Sept. 24, 2014) (quoting *Fed Deposit Ins. Corp. v. LDM Props., Inc.*, 1996 WL

449346, at *3 (E.D.N.Y. Jul. 29, 1996)); *accord Cavendish Traders, Ltd. v. Nice Skate Shoes,*

*Ltd.*, 117 F. Supp. 2d 394, 398 n.6 (S.D.N.Y. 2000); *Silvertip Cap. (IG) LLC v. Baraka Inv. Ltd.*,

2025 WL 871642, at *3 (S.D.N.Y. Mar. 20, 2025).

## DISCUSSION

### I.    Defendants Are Liable Under the Guaranty.

To establish a claim for breach of guaranty under New York law, a plaintiff must show

"the existence of the guaranty, the underlying debt and the guarantor's failure to perform under

the guaranty." *Cooperatieve Centrale Raiffeisen-Boerenleenbank, B.A. v. Navarro*, 36 N.E.3d

80, 84 (N.Y. 2015) (citation omitted); *accord 500 W. 43rd St. Realty, LLC v. Thukral*, 2025 WL

315375, at *5 (S.D.N.Y. Jan. 28, 2025).  "To prevail on its motion for summary judgment,

Plaintiff must demonstrate that there are no genuine disputes surrounding any of the facts that are

material to these three requirements." *Torin Assocs., Inc. v. Perez*, 2016 WL 6662271, at *4

(S.D.N.Y. Nov. 10, 2016).  "The burden then shifts to the defendant to raise a 'triable issue of

fact in the form of a bona fide defense.'" *ICBC (Lond.) PLC v. Blacksands Pac. Grp., Inc.*, 2015

WL 5710947, at *2 (S.D.N.Y. Sept. 29, 2015) (quoting *Camofi Master LDC v. Coll. P'ship, Inc.*,

452 F. Supp. 2d 462, 470 (S.D.N.Y. 2006)).

### A.    Plaintiff Has Established Its Prima Facie Case.

Plaintiff has established all three elements of its prima facie case.

First, Defendants executed a valid guaranty in favor of Plaintiff.  Dkt No. 32-4; *see also*

Dkt. No. 40 ¶ 4 ("Defendants admit that, on or about September 15, 2023, Guarantors signed and

delivered to the lender the Guaranty . . . .").  The Guaranty provides that Defendants

"unconditionally, absolutely, [and] irrevocably guarantee[] payment to Lender . . . [and] shall be

8

personally and jointly and severally liable for the complete and prompt payment and performance of the Loan." Dkt. No. 32-4 § 1.3, at 3. The "Guaranty may not be revoked by Guarantor and shall continue to be effective with respect to any Guaranteed Obligations arising or created after any attempted revocation by the Guarantor." *Id.* § 1.4, at 4.

Second, there is no genuine issue of an underlying debt. "Defendants neither dispute that the loan was made, nor the terms of the loan, . . . and the Guarantee incorporates those terms by reference." *See Torin Assocs.*, 2016 WL 6662271, at *6.

Third, Defendants also do not dispute that they failed to perform under the Guaranty. Rather, they seek to excuse that failure. *See* Dkt. No. 40 ¶¶ 5–8. But such an excuse goes to their affirmative defenses, not Plaintiff's prima facie case. *See HSH Nordbank Ag N.Y. Branch v. Swerdlow*, 672 F. Supp. 2d 409, 419 n.13 (S.D.N.Y. 2009) ("Defendants argue that their frustration of performance and bad faith arguments are not affirmative defenses, but instead undermine plaintiff's prima facie case because they show that the default was a 'sham.' These arguments are in fact affirmative defenses . . . ."), *aff'd sub nom. HSH Nordbank AG New York Branch v. St.*, 421 F. App'x 70 (2d Cir. 2011) (summary order). The Court therefore concludes that Plaintiff has established its prima facie case and turns to Defendants' affirmative defenses.

## B.    Defendants' Affirmative Defenses Lack Merit.

Defendants principally contend that they are not liable under the Guaranty "because Plaintiff prevented Defendants from fulfilling their contractual obligations and thus facilitated their liability." Dkt. No. 39 at 4. This argument rests on events that occurred in 2025.

In January 2025, the Borrowers received a purchase offer for the Dallas Property from Harrel Group, LLC, in the amount of $4.6 million, and later that month, the Borrowers received a purchase offer for the Dallas Property from Greenway Investment Company ("Greenway") in the amount of $3.3 million. Dkt. No. 41 ¶¶ 6, 8. The Borrowers accepted the offer from

9

Greenway, which allowed for a contingency period of thirty days with a fifteen-day post-contingency period to close. *Id.* ¶ 8. Before the close of the contingency period, however, Plaintiff refused to stay the pending foreclosure of the Dallas Property to allow for the lot to be sold to Greenway. *Id.* ¶ 10. As a result, on March 3, 2025, Greenway terminated the contract to purchase the Dallas Property and requested a return of its deposit. *Id.* In or about April or May 2025, the Borrowers engaged in discussions with Green Town Holdings LLC ("Green Town") for the purchase of the College Station Property. *Id.* ¶ 15. The parties executed a purchase and sale agreement indicating a purchase price, subject to applicable adjustments, of $5.4 million and a ten percent net profits participation agreement in the operation and use of the property. *Id.* ¶ 25. Plaintiff, however, failed to provide the definite amount of the alleged indebtedness, which Green Town needed to proceed with the purchase. *Id.* ¶¶ 16, 18–19. Ultimately, Green Town lost interest in the property due to the perception that there were legal "red flags" associated with it. *Id.* ¶ 23.

Defendants contend that "[b]ad faith by a lender would be a complete defense to an unconditional guaranty," Dkt. No. 39 at 11 (citation and internal quotation marks omitted), and that "[i]n failing to meaningfully engage with the Proposed Sales," Plaintiff acted in bad faith and "prevented Defendants from fulfilling their obligations under the Guaranty," *id.* at 2. Specifically, Defendants argue that "Plaintiff's deliberate stonewalling, i.e., stalling of negotiations and refusal to engage with the bona fide Proposed Sales procured by Defendants, clearly constitute inaction embodying evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, . . . and interference with or failure to cooperate in the [Defendants'] performance." *Id.* at 11 (citation and internal quotation marks omitted). According to Defendants, the expectation that Plaintiff "would in good faith entertain

bona fide property sale offers procured by Defendants in lieu of inferior offers or foreclosure" was "at the core of the 'intent of parties' and 'within [their] reasonable expectations.'" *Id.* at 12 (citation omitted).

This defense fails on several fronts. As an initial matter, Defendants have waived any affirmative defenses. "New York courts have consistently held that absolute and unconditional guaranties of the type signed by the individual defendants waive any defense or counterclaim that the guarantor might assert." *77 Charters, Inc. v. SYC Realty LLC*, 2012 WL 1077706, at *8 (E.D.N.Y. Feb. 27, 2012), *report and recommendation adopted*, 2012 WL 1078466 (E.D.N.Y. Mar. 30, 2012); *accord Hitachi Constr. Mach. Co., Ltd v. Weld Holdco, LLC*, 2023 WL 8452389, at *13 (S.D.N.Y. Dec. 6, 2023). Under New York Law, "the only affirmative defenses that are not waived by an absolute and unconditional Guaranty are payment and lack of consideration for the Guaranty." *CIT Grp./Com. Servs., Inc. v. Prisco*, 640 F. Supp. 2d 401, 410 (S.D.N.Y. 2009) (citing *Walcutt v. Clevite Corp.*, 191 N.E.2d 894, 897 (N.Y. 1963)). The Guaranty here is, of course, absolute and unconditional, and Defendants have not alleged payment or lack of consideration. Nor have they alleged "duress, coercion, or procedural unconscionability in the formation of the guaranty agreement." *See White Oak Glob. Advisors LLC v. Clarke*, 793 F. Supp. 3d 490, 496–97 (S.D.N.Y. 2025). Defenses are therefore presumptively waived.

Reading the contract as a whole confirms waiver. *See Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210, 1213–14 (NY. 2007) ("[A] contract should be 'read as a whole, and every part will be interpreted with reference to the whole . . . .'" (citation omitted)). Generally, the Guaranty states that Defendants' liabilities and obligations "shall not be reduced, discharged or released because or by reason of any existing or future . . . defense . . ., whether such . . . defense arises in

11

connection with the Guaranteed Obligations (or the transactions creating the Guaranteed Obligations) or otherwise." Dkt. No. 32-4 § 1.5, at 4. And it reiterates that Defendants' obligations "shall not be reduced, discharged or released because of or by reason of any . . . defense of Borrower against Lender." *Id.* § 2.10, at 10.

More specifically, the Guaranty waives the precise kind of defense Defendants now invoke, as Defendants agreed to "waive[] any common law, equitable, statutory or other rights" associated with (1) the "loss or impairment (including without limitation negligent, willful, unreasonable or unjustifiable impairment) of any collateral, property or security at any time," *id.* § 2.7, at 10; and (2) the "failure of Lender or any other Person to exercise diligence or reasonable care in the . . . sale or other handling or treatment of all or any part of any collateral, property or security," *id.* § 2.8, at 10. At bottom, Defendants argue that Plaintiff impaired the collateral by refusing "to meaningfully engage with the Proposed Sales" and failing to exercise diligence or reasonable care in the sale or handling of the Properties, *see* Dkt. No. 39 at 10, but as these provisions make clear, Plaintiff was under no such obligation to do so. *See also id.* § 1.8(r), at 7 (waiving any defense regarding Plaintiff's lack of commercial reasonableness in dealing with the collateral for the loan).[2] Defendants therefore cannot establish that Plaintiff acted in bad faith in failing to facilitate the proposed sales.

If that were not enough, the Guaranty further clarifies that "Guarantor is not entering into this Guaranty in reliance on, or in contemplation of the benefits of, the validity, enforceability, collectability or value of any of the collateral for the Guaranteed Obligations." *Id.* § 2.9, at 10.

---

[2] Further undermining Defendants' argument that Plaintiff was obliged to "meaningfully engage with the Proposed Sales," *see* Dkt. No. 39 at 10, is the fact that the Guaranty nowhere says as much—despite the fact that the Guaranty *does* explicitly require Defendants to cooperate with and to assist Plaintiff with any secondary market transaction, *see* Dkt. No. 32-4 § 6.6, at 16.

And the Guaranty indicates that it is "the unambiguous and unequivocal intention of Guarantor that Guarantor shall be obligated to perform and/or pay the Guaranteed Obligations when due, notwithstanding any occurrence, circumstance, event, action, or omission whatsoever." *Id.* § 2.14, at 10.  Together, these provisions conclusively foreclose Defendants from now arguing that Plaintiff is responsible for Defendants' failure to perform under the Guaranty.

Moreover, these provisions are consistent with background understandings of unconditional guaranties: "The authorities agree that one who unconditionally guaranties an indebtedness is not released or discharged by virtue of any lack of diligence with respect to, or release or impairment of, collateral by a secured creditor." *Walter E. Heller & Co. v. Cox*, 343 F. Supp. 519, 526 (S.D.N.Y. 1972), *aff'd sub nom. Walter E. Heller & Co., Inc. v. Ocean Air Tradeways*, 486 F.2d 1398 (2d Cir. 1973); *see Rabb v. 635 Realty Corp.,* 1998 WL 132934, at *2 (S.D.N.Y. Mar. 20, 1998) (explaining that where "the guaranty documents are unconditional, the guarantor . . . cannot escape full guaranty liability based on the lender's alleged failure to maximize other collateral or the lender's release of the collateral"); *see also First City Bank, N.A. v. Air Capitol Aircraft Sales, Inc.*, 820 F.2d 1127, 1135 (10th Cir. 1987) ("The case law makes it clear that . . . a continuing guarantor[, the kind of guarantor at issue here,] as distinguished from a guarantor of collection on a single note, is not discharged by impairment of collateral.").

Even if Defendants' arguments were not waived many times over, they would still fail. In contesting liability, Defendants rely on Plaintiff's conduct with respect to proposed sales in 2025—in other words, events that took place months after Plaintiff first notified Defendants of an event of default in March 2024, and months after Plaintiff accelerated the Note in May 2024. Put simply, Plaintiff's conduct in 2025 has no bearing on Defendants' liability for conduct in 2024.  This case is therefore readily distinguishable from *Canterbury Realty & Equipment Corp.*

13

*v. Poughkeepsie Savings Bank*, 524 N.Y.S.2d 531 (3d Dep't 1988), which Defendants cite in

their opposition brief, Dkt. No. 39 at 4–5, 10.  *Canterbury* stands for the proposition that a

"promisee who prevents the promisor from being able to perform the promise cannot maintain

suit for nonperformance; he discharges the promisor from duty."  524 N.Y.S.2d at 535 (citation

omitted).  Plaintiff's refusal to facilitate the proposed sales in 2025 and its decision instead to

proceed with foreclosure did not prevent the Borrowers from performing months earlier when

Plaintiff informed them of the events of default and its intention to accelerate the Note and move

for foreclosure.  Defendants assert that Plaintiff "created the conditions that allowed [it] to

accelerate the liability against the guarantor[s]," *see* Dkt. No. 39 at 10 (quoting *Legal Recovery

Assocs. LLC v. Brenes L. Grp., P.C.*, 2023 WL 2253138, at *2 (S.D.N.Y. Feb. 13, 2023)), but the

evidence in the record conclusively rebuts that contention—especially given Defendants' explicit

concession that they were "*not* entering into this Guaranty in reliance on . . . [the] collectability

or value of any of the collateral," Dkt. No. 32-4 § 2.9, at 10 (emphasis added).

This case instead more closely resembles *Red Tulip, LLC v. Neiva*, 842 N.Y.S.2d 1 (1st

Dep't 2007).  There, the defendant argued that the plaintiff prevented it from obtaining funds that

could have been used to pay a mortgage by refusing to consent to the sales of certain

condominium apartments.  *Id.* at 7.  Rejecting this defense, the First Department explained that

the plaintiff was under no contractual obligation to approve such sales, and that "while it is clear

that [the lender] elected to pursue foreclosure instead of attempting to salvage the Red Tulip

project, it is also clear that [the lender] was entitled to do so."  *Id.*  The lender's decision to elect

foreclosure was nothing "other than legitimate business decisions to protect his substantial

investment."  *Id.*  Additionally, the court observed that "at the time of [the] alleged wrongful

conduct, the mortgage debt had already become due and was in default."  *Id.* at 6.  The court thus

14

found *Canterbury* distinguishable.  So too here.  Defendants' arguments are waived and, regardless, Plaintiff did not cause Defendants' default.

Defendants are therefore liable under the Guaranty.

## II.    Defendants' Counterclaims Must Likewise Be Rejected.

Defendants have also brought counterclaims against Plaintiff for offset and breach of the implied covenant of good faith and fair dealing stemming from Plaintiff's failure to cooperate in the sale of the Properties.  *See* Dkt. No. 22.  Defendants acknowledge that whether they "are successful in showing that Plaintiff refused to engage with the Proposed Sales in bad faith, thus unreasonably foregoing opportunities to satisfy the Alleged Indebtedness in a way that entitles Defendants to a corresponding offset or extinguishment of the Alleged Indebtedness (the gravamen of the counterclaims) is essentially the same question at the heart of whether Plaintiff's claim (or Defendants' defenses) will prevail."  Dkt. No. 39 at 18.  Defendants' counterclaims must therefore be rejected for the same reasons as their defenses.  The Court nonetheless addresses the counterclaims for the sake of completeness.

The covenant of good faith and fair dealing "applies where an implied promise is so interwoven into the contract 'as to be necessary for effectuation of the purposes of the contract.'" *Thyroff v. Nationwide Mut. Ins. Co.,* 460 F.3d 400, 470 (2d Cir. 2006) (quoting *M/A-COM Sec. Corp. v. Galesi,* 904 F.2d 134, 136 (2d. Cir. 1990)); *see also S. Telecom v. ThreeSixty Brands Grp., LLC,* 520 F. Supp. 3d 497, 507 (S.D.N.Y. 2021) (covenant is only breached where its application would not "negate the terms of the bargained-for clause" and is "necessary to preserve the fruits of a contract and prevent it from being illusory").  Where application of the covenant of good faith and fair dealing would "negate a[n] expressly bargained-for clause that allows a party to exercise its discretion," *Paxi, LLC v. Shiseido Ams. Corp.*, 636 F. Supp. 2d 275, 286 (S.D.N.Y. 2009), it cannot be said that application of the covenant is necessary to preserve

15

the "fruits of the contract," *Moran v.* Erk, 901 N.E.2d 187, 190 (N.Y. 2008) (citation omitted); *see also Daiwa Special Asset Corp. v. Desnick*, 2002 WL 1997922, at *11 (S.D.N.Y. Aug. 29, 2002) ("Good faith and fair dealing are implied in every contract *unless to do so would be inconsistent with the express terms of the contract*." (emphasis added)).

In addition to waiving their affirmative defenses, Defendants have also waived their counterclaims: "The Guaranteed Obligations, and the liabilities and obligations of Guarantor to Lender hereunder, shall not be reduced, discharged, or released because or by reason of any existing or future offset [or] claim . . . of Borrower . . . ." Dkt. No. 32-4 § 1.5, at 4. Defendants resist this conclusion by pointing to Section 1.8(l) of the Guaranty, which provides that Defendants waive "the right to assert a counterclaim, other than a mandatory or compulsory counterclaim, in any action or proceeding brought against or by Guarantor." *Id.* § 1.8(l), at 5. Defendants read this "other than a mandatory or compulsory counterclaim" language as reserving their right to bring a claim—seemingly any claim—against Plaintiff so long as it is mandatory or compulsory. Dkt. No. 39 at 16. But that reading proves far too much. As outlined above, Defendants have both generally and specifically waived an array of defenses and claims in connection with the Guaranty. *See, e.g.*, Dkt. No. 32-4 §§ 1.5, 1.7., 1.8, 2.7, 2.8, 2.9, 2.10, 2.14. Section 1.8(l) does not entirely negate those waivers in circumstances where the defense could be framed as a compulsory counterclaim. Such a reading would nullify the purpose of the unconditional and absolute guaranty. For example, under Defendants' reading, they would be entitled to bring a claim for offset—which the Guaranty expressly waives in multiple places, *see* Dkt. No. 32-4 §§ 1.5, 2.10—so long as Plaintiff first brought suit against them and the offset claim arose out of the same transaction or occurrence, *see* Fed. R. Civ. P. 13(a). That cannot be right. Section 1.8(l) is instead most sensibly read to mean that if Defendants have not elsewhere

16

in the Guaranty waived a claim (e.g., were they to bring a claim for fraud, which is not mentioned in the Guaranty, and which some courts have noted might "fall[] outside the scope of an . . . unconditional and absolute guaranty," *see Navarro*, 36 N.E.3d at 88), they might be entitled to assert that claim as a compulsory counterclaim.

In any event, as with their defenses, Defendants' counterclaims fail on the merits. Reading the contract as a whole, Plaintiff was permitted to proceed with foreclosure without waiting for Defendants to sell the Properties and without having to assist them with those efforts. *See* Dkt. No. 32-4 § 1.7, at 4 (Plaintiff "shall not be required to *mitigate damages or take any other action* to reduce, collect or enforce the Guaranteed Obligations" (emphasis added)); *id.* § 2.14, at 10 (Defendants' obligations shall not be released, diminished, or impaired by "[a]ny other action taken or omitted to be taken with respect to the Loan Documents, the Guaranteed Obligations, or the security and collateral therefor, *whether or not such action or omission prejudices Guarantor or increases the likelihood that Guarantor will be required to perform and/or pay the Guaranteed Obligations*." (emphasis added)); *id.* ("[It is] the unambiguous and unequivocal intention of Guarantor that Guarantor shall be obligated to perform and/or pay the Guaranteed Obligations when due, *notwithstanding any occurrence, circumstance, event, action, or omission whatsoever*."); *see also* Dkt. No. 32-3 § 10.2.4, at 51 (Upon the occurrence of an event of default, the Loan Agreement entitles Plaintiff to "accelerate maturity of the Note and . . . demand payment of the principal sum due thereunder . . . and enforce collection of such payment *by foreclosure of the Security Instrument* or the enforcement of any other collateral, or other appropriate action." (emphasis added)); *id.* § 10.2.1, at 50 (reserving Plaintiff's right to foreclose the Security Instrument upon default); *id.* § 10.2.2, at 50 (same).

Given these broad and "unambiguous" provisions, Plaintiff's decision to foreclose on the Properties was in no way inconsistent with the spirit of the agreement. To the contrary, it "would be inconsistent with the express terms of the contract" to read the Guaranty as Defendants now suggest. *See Daiwa Special Asset Corp.*, 2002 WL 1997922, at *11. "A party's enforcement of its rights under the explicit terms of a contract, which may result in a negative effect on the other party, does not constitute bad faith . . . ." *In re Hypnotic Taxi LLC*, 2017 WL 1207471, at *5 (Bankr. E.D.N.Y. Mar. 31, 2017). Plaintiff's rights under the Guaranty were not conditioned by, and cannot be reduced by, any failure to mitigate Defendants' damages. If Plaintiff chose to foreclose on the Properties that served as the collateral for the loan and not to wait for the Borrowers to sell them, that was its right under the Loan Agreement. And if, as a result, Defendants bear greater liability under the Guaranty than they would have had they been able to sell the Properties, that was a natural and agreed upon consequence of the Guaranty.

The counterclaims accordingly fail as well.

## III.     Summary Judgment on Damages Is Inappropriate at this Time.

Plaintiff asserts that it is entitled to judgment for the outstanding amount owed to it, which it calculates to be the total unpaid principal amount of $4,673,841.95, plus all accrued unpaid interest, late charges, and reasonable attorneys' fees and costs. Dkt. No. 32 ¶ 36.

Defendants argue that Plaintiff should not be granted summary judgment as to damages because the amount now being sought differs from the $6.4 million requested in the complaint and the evidence supporting damages was not produced in discovery. Dkt. No. 39 at 18–19. Defendants also argue that the value of the Properties was greater than the amounts for which they were sold and that "[a]fter considering Plaintiff's failure to mitigate damages by refusing to meaningfully engage with the Proposed Sales, this number should effectively be zero." *Id.* at 19.

18

As previously explained, Plaintiff had no duty to mitigate Defendants' damages by facilitating the Proposed Sales, so the Court rejects Defendants' argument that this issue precludes summary judgment with respect to damages. However, summary judgment on damages is unwarranted for a separate reason. Plaintiff's opening memorandum of law in support of the motion for summary judgment and the supporting affidavit and declaration do not specify how Plaintiff arrived at the $4,673,841.95 figure, which, as Defendants observe, differs from the complaint's request of $6.4 million. *See* Dkt. Nos. 32–34. Defendants contend, moreover, that Plaintiff has never provided its damages calculation in discovery as required by Federal Rule of Civil Procedure 26. *See* Dkt. No. 39 at 18–20.

The reply declaration of Joseph Kolatch does lay out Plaintiff's damages calculation. *See* Dkt. No. 43 ¶ 19. But it is well-established that "new arguments first raised in reply papers are not a proper basis for granting summary judgment and should not be considered." *Haitian Bridge All. v. U.S. Dep't of Homeland Sec.*, 2024 WL 476304, at *5 (S.D.N.Y. Feb. 7, 2024); *see also United States v. E. River Hous. Corp.*, 90 F. Supp. 3d 118, 162 (S.D.N.Y. 2015) (declining to consider declarations and exhibits submitted in connection with summary judgment reply papers where those materials raised new issues, and collecting cases holding the same).

The motion for summary judgment with respect to damages is therefore denied without prejudice to renewal.[3] If Plaintiff renews the motion, it shall file a proper Rule 56.1 statement supported by evidence. Defendants may file a Rule 56.1 statement in response.

---

[3] Defendants argue that they need additional discovery to determine "(i) the full extent of Plaintiff's bad faith acts or omissions that culminated in a refusal to consider the Proposed Sales in good faith and prevented Defendants from paying the Alleged Indebtedness, (ii) how Plaintiff has determined that there is any amount outstanding pursuant to the Guaranty at all, and how it has determined the specific figure it now claims, and (iii) the specific effect of the foreclosures on the alleged amount outstanding." Dkt. No. 39 at 3. Putting aside the fact that Defendants at no point moved to compel the production of documents during discovery and made no mention

**CONCLUSION**

The motion for summary judgment is GRANTED IN PART and DENIED IN PART. Summary judgment is granted with respect to liability but denied with leave to renew with respect to damages.

The Clerk of Court is respectfully directed to close Dkt. No. 31.

SO ORDERED.

Dated: December 16, 2025
     New York, New York

                                                          _____
                                                                    LEWIS J. LIMAN
                                                               United States District Judge

---

of this issue at the post-discovery status conference, the Court disagrees for the reasons already provided that discovery regarding good faith is necessary. Moreover, Plaintiff's reply declaration sets out how Plaintiff has calculated its damages and the effect of the foreclosures on the amount outstanding. *See* Dkt. No. 43 ¶ 19. This information has therefore "been made known to the other parties during the discovery process or in writing," *see* Fed. R. Civ. P. 26(e)(1)(A), and need not be reproduced in a disclosure.

20